# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____
                                       )
**AMERICAN BUS ASSOCIATION, INC.,**)
                                       )
                                       )
   **v.**      )
                                       )  **Civil Action No. 10-686 (ESH)**
**PETER M. ROGOFF, Administrator,** )
**Federal Transit Administration, and** )
**THE FEDERAL TRANSIT**  )
**ADMINISTRATION**    )
                                       )
_____)

### PLAINTIFF AMERICAN BUS ASSOCIATION, INC.'S REPLY TO DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION

  Plaintiff American Bus Association, Inc. ("ABA") submits this brief reply to address a few points raised by the Defendants in their Opposition filed May 26, 2010.

### I.  ABA Has Standing on Its Own Behalf and to Represent Its Members

  Defendants challenge ABA's standing to bring this lawsuit, relying solely on ABA's status as an association to argue that it lacks associational standing because ABA did not specifically identify a particular member that is harmed by the Murray Amendment.  Defendants' arguments are baseless.

  ABA has met all the requirements necessary to demonstrate standing.  *American Chemistry Council v. Department of Transportation*, 468 F. 3d 810, 815 (D.C. Cir. 2006) (stating the three elements of standing: (1) injury in fact that is (a) concrete and particularized and (b) actual or imminent, (2) a causal connection between the injury and the conduct complained of,

and (3) it is likely and not merely speculative that the injury will be redressed by a favorable decision).

First, ABA need not rely on associational or representational standing to bring this action on behalf of its members.  ABA, as a separate legal entity, may bring this action on its own behalf.  This suit alleges that the Murray Amendment unconstitutionally infringes on the right of ABA *and* its members to challenge King County Metro's charter service before the FTA.  The Murray Amendment infringes on the rights to petition the government for redress of grievances, due process, and equal protection, and imposes on the separation of powers doctrine.  ABA, apart from its members, has a right on its own to bring each one of those constitutional challenges.

The Charter Rule specifically allows for participation by associations like ABA.  The Rule allows "interested parties" to request advisory opinions and cease and desist orders.  49 C.F.R. §§ 604.18(a), 604.22(a).  The term "interested party" specifically includes associations. 49 C.F.R. 604.3(l).  The Rule's complaint process also specifically allows complaints to be brought by a registered charter provider, "or its duly authorized representative."  49 C.F.R. § 604.27(a).  ABA has acted numerous times on behalf of its members to challenge violations of the charter rule.  *See, e.g., American Bus Association, Inc. v. Akron Metro Regional Transit Authority*, Charter Service Docket No. 2005-05 (March 22, 2006); *American Bus Association v. VIA Metropolitan Transit*, TX, Decision, TX-08/89-01, (May 6, 1992); *American Bus Association et al. v. Washington Metropolitan Area Transit Authority*, DC, Decision, DC-04/89-01 (April 20, 1990).

Not only does ABA as a separate entity have the right to challenge violations of the Charter Rule before the FTA, it has already stated that it would do so against King County Metro

but for the Murray Amendment.  *See* Pantuso Affidavit (Exhibit 1 to ABA's Application).  Thus, ABA has sufficiently demonstrated that it has a right, separate and apart from its standing as a representative of its members, to bring the current action.  ABA's inability to bring a charter complaint constitutes an immediate, concrete injury in fact that can be remedied with a declaration by this court that the Murray Amendment is unconstitutional and an injunction preventing FTA from abiding by it.

Defendants also assert that ABA lacks associational standing because it did not identify a specific member who has suffered an injury in fact.  Opp. at 9 (*citing American Chemistry Council*, 468 F.3d at 820).  On the contrary, ABA has already identified by name the specific carriers who are registered charter providers in the Seattle area.  Pantuso Affidavit, Exhibit 1 to ABA's Application.  To supplement that information, ABA has attached hereto a second affidavit from Mr. Pantuso explaining that 78 of the 141 private charter operators included on the list are members of ABA.  Supplemental Affidavit of Peter J. Pantuso, Exhibit 1 hereto.  Included in those members is the privately-owned charter operator also identified by the United Motorcoach Association, Starline Luxury Coaches of Seattle, Washington in the companion case to this action, *United Motorcoach Association, Inc. v. Rogoff*, Civil Action No. 10-00701 (ESH).  Starline is also an ABA member, and provided charter service to Mariners baseball games in 2009.[1]  *Id*.  Starline has indicated a desire to provide the service for the 2010 season as well, and would be able to challenge King County Metro's provision of the service but for the Murray

---

[1] ABA notes that the United Motorcoach Association has attached an affidavit from Gladys Gillis, CEO of Starline, in the Reply memorandum in the companion case.  ABA refers to and incorporates herein by reference the Gillis Affidavit and the arguments asserted by UMA related to Starline in its Application and Reply.

Amendment.[2]   The Supplemental Pantuso Affidavit eliminates any doubt that ABA may also

assert associational standing.

### II.  ABA Has Shown That It Is Suffering Irreparable Injury

Defendants assert that ABA has not shown irreparable injury to merit preliminary

injunctive relief.  In light of the court's intent to consolidate the preliminary injunction hearing

with a summary judgment hearing on the merits, ABA asserts that proof of irreparable injury is

no longer required.  Nevertheless, Defendants' arguments do not compel a conclusion that ABA

and its members are not suffering irreparable injury.

ABA will not repeat the arguments on which irreparable injury standard to apply to each

constitutional violation.  ABA adequately showed in its application that a *per se* rule of

irreparable injury applies to violations of the right to petition for redress of grievances under the

First Amendment, and that, even if a *per se* rule did not apply for the other constitutional

violations, ABA had met the appropriate standard.  The Murray Amendment deprives ABA and

its members of their constitutional rights which cannot be redressed in any way other than an

injunction preventing FTA from abiding by the Murray Amendment.  ABA does, however, wish

to clear up a mischaracterization of its argument.

Defendants assert that ABA's claims of injury are twofold: (1) the deprivation of

constitutional rights, and (2) potential economic loss.  Although ABA has presented evidence

that its members will suffer economic loss because of King County Metro's provision of illegal

charter service, that loss is not compensable in this or any other litigation.  Damages are not a

---

[2] Again, Defendants mischaracterize the injury to Starline.  Opp. at 12.  ABA need not allege that Starline would have gotten the contract but for the Murray Amendment.  ABA need only allege, as it has, that it and Starline would be able to, and in fact would, challenge King County Metro's service but for the unconstitutional limitations established by the Murray Amendment.  The injury is the deprivation of constitutional rights.

remedy sought in this case, *see* Application at 32-33, and no damages would be available even in a proceeding before the FTA to challenge King County Metro's charter service.  While there is economic loss, that loss is irreparable because neither ABA nor its members will recover losses already suffered by King County Metro's illegal actions.

Defendants' arguments that the deprivation of rights caused by the Murray Amendment fail to demonstrate irreparable injury are unpersuasive.  They assert that ABA and UMA have hundreds of members nationwide who are unaffected by the Murray Amendment.  Opp. at 19-20. Obviously, that does not diminish the deprivation of rights for those members who are affected. Defendants then claim, in an echoing of their standing argument, that ABA and UMA have not identified anyone, except Starline, who has sought to provide the service.  As with their standing arguments, this assertion ignores the fact that ABA and UMA can claim a deprivation of their right both on their own behalf as well as on behalf of their members.  Defendants also muddle, the real nature of the harm here.  They claim that all of the companies are free to compete for other charter business, even in Seattle, and that any limitation on competitiveness is *de minimis*. Opp. at 20.  Again, the limitation to competitiveness is not the real issue here – that is what Plaintiffs want the FTA to decide.  It is the limitation on constitutional rights that is the issue.

### III.  ABA Has Shown a Likelihood of Success on its Right to Petition Claim

The Defendants do not question ABA's assertion that the allegations under the right to petition are subject to strict scrutiny analysis.  Thus, the Murray Amendment must be struck down unless it is "justified by a 'sufficiently compelling' governmental interest, and if the means chosen to effectuate that governmental interest is 'closely drawn to avoid unnecessary abridgement of [first amendment] freedoms . . .'"  *Int'l Union UAW v. National Right to Work*

*Legal Defense and Education Found., Inc.*, 433 F. Supp. 474, 482 (D.D.C. 1977) (internal citations omitted).

To combat ABA's First Amendment claim, Defendants make two arguments: (1) that ABA "grossly overstates" the effect and limitation imposed by the Murray Amendment (Opp. at 23), and (2) that Congress had the power to exclude King County Metro from the Charter Rule. Neither argument holds water.

ABA does not overstate the effect of the Murray Amendment.  Defendants claim that the Murray Amendment does not prevent ABA or anyone else from filing a compliant, participating in the full adjudicatory process at the agency, obtaining a final agency review, or seeking judicial review of the agency's decision.  Opp. at 23.  They also assert, as they do throughout the Opposition, that the Murray Amendment does not ban anyone from seeking and getting an advisory opinion.  *Id*.  They conclude, "The statutory amendment simply precludes the use of 2010 appropriated funds to enforce the Charter Rule against KCM."  Opp. at 24.

Defendants do not explain how the FTA can receive complaints, conduct hearings and investigations, issue advisory opinions, cease and desist orders, or final agency decisions, or conduct any of the other procedures set forth in the Charter Rule, without spending any money.  Those procedures are the mechanisms by which the Charter Rule is enforced.  The FTA must, of necessity, spend appropriated money to conduct those procedures – *i.e*., to enforce the Charter Rule.  ABA does not overstate the effect of the Charter Rule, grossly or otherwise.  The effect is clear: to deny the right of ABA and its members to seek a redress of grievances before the FTA.

Defendants' other arguments in this vein are equally unpersuasive.  Of course ABA is free to petition for a change in the law and comment on proposed changes to the rule, and ABA did lobby against the enactment of the Murray Amendment.  *See* Opp. at 23.  But the deprivation

of the right to petition complained of here does not concern the right to petition over the Murray Amendment's adoption.  It concerns the right to petition over King County Metro's violation of the Charter Rule.  ABA does not argue that it was deprived of a right to petition the government over the Murray Amendment – that is what this case is doing.  ABA and its members are being deprived of the right to petition the FTA over King County Metro's illegal charter service.

Defendants' second argument, that Congress had the power to enact the Murray Amendment and may abolish causes of action and remedies, is invalid.  Opp. at 24-25.  First, Congress did not abolish any cause of action with the Murray Amendment.  The Amendment did not affect the FT Act or the Charter Rule at all.  Recipients of FTA funds, including King County Metro, are still under an obligation not to unfairly compete with privately-owned charter operators.  The only thing the Murray Amendment does is deny FTA the ability to enforce the Charter Rule, which denies the ability of ABA and its members to seek redress of King County Metro's current violation.  That is a classic example of denial of the right to petition the government.

Further, while Congress may have the right generally to create and abolish causes of action, it cannot do so in a manner that is itself unconstitutional.  The principle case cited by Defendants, *City of New York v. Beretta U.S.A. Corp.*, 524, F.3d 384 (2d Cir. 2008) is clearly distinguishable from this case.  In *Beretta*, Congress effected a change in the underlying law prohibiting civil actions brought "by any person" against any manufacturer or seller of firearms for damages resulting from the illegal use of those firearms by third persons.  *Id*. at 389.  The act at issue, the Protection of Lawful Commerce in Arms Act, "[b]y its terms . . . bars plaintiffs from courts for the adjudication of qualified civil liability actions, allowing access for only those actions that fall within the Act's exceptions.  We conclude that these restrictions do not violate

plaintiffs' right of access to the courts." *Id*. at 397.  The statute there applied to all plaintiffs and all manufacturers across the country and still left some access for plaintiffs in certain circumstances.

In this case, however, the Murray Amendment applies to a limited group: King County Metro and the potential claimants against King County Metro.  The potential complainants here have no other recourse against King County Metro – they are completely without remedy and totally denied access to the FTA or the courts.  Finally, as noted above, the Murray Amendment does not effect a change in the underlying cause of action.  That cause of action still exists.  ABA and its members are simply not allowed to pursue it with FTA.

The Murray Amendment's limited application to King County Metro and those entities who would challenge that transit agency is also itself a violation of the Equal Protection Clause.  The Amendment's focus on such a small, readily identifiable group of persons bolsters the notion that the Amendment is unconstitutional.  As noted above, the government must show a compelling interest and that the means chosen are closely drawn to avoid unnecessary abridgment of Plaintiff's freedoms.  *Int'l Union UAW,* 433 F. Supp. at 482.  They cannot do so here.  The very fact that the FT Act and the Charter Rule are untouched for the remainder of the country demonstrates that there is no legitimate, let alone compelling, governmental interest to be protected here.  And even if the public's interest in affordable transportation can be advanced by allowing transit agencies to provide charter service in some circumstances, that interest is already sufficiently protected by the FTA through its enforcement of the Charter Rule and individual grant agreements.

### IV.  ABA Has Shown Loss of Due Process Protection

Defendants argue that there is no deprivation of due process protections here because Congress' action in adopting the Murray Amendment gave Plaintiffs all the process they were due.  They argue that Congress is free to create defenses or immunities for causes of action it creates, and they have done so in this case.  Opp. at 27-29 (*citing Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), *Jung v. Assoc. of American Medical Colleges*, 339 F. Supp. 2d 26 (D.D.C. 2004)).  Defendants' analysis of this case in light of *Logan* and *Jung* misses the mark.

The key distinction in both *Logan* and *Jung* involve the difference between a substantive and procedural due process limitation.  Defendants are correct that the *Logan* Court noted the state's ability to amend the substantive law by creating "substantive defenses or immunities . . ." *Logan*, 455 U.S. at 432.  The Court found, however, that the 120-day limitation in the FEPA was a procedural protection, not a substantive element of the law.  *Id.* at 433.  It was not the kind of "substantive defense or immunity" that the Court said the legislature is free to create or abolish. *Id.* (The time limitation "is a procedural limitation on the claimant's ability to assert his rights, not a substantive element of the FEPA claim.").  Instead, the 120-day limitation completely deprived the plaintiff of any forum to bring his claim.  *Id.* at 432.  Because the plaintiff had a property interest in his claim, the denial of any forum to hear that claim was a violation of due process.  *Id.*

*Jung* is consistent with that holding.  Although the outcome in *Jung* was the reverse of that in *Logan*, the reasoning is the same.  The *Jung* court noted *Logan's* holding that a property interest can be created by the establishment of a cause of action, and that the property right cannot be taken away "without providing the party with any judicial forum."  *Jung*, 339 F. Supp. 2d at 43.  The court found, however, that the statute at issue "does not deny plaintiffs a forum in

which to bring their claim.  Instead, the statute restricts the basis for an antitrust cause of action, which is not an unconstitutional restriction so long as there is a rational basis for the law . . ."  *Id.*

The Murray Amendment is also a procedural limitation that completely deprives ABA and its members of a forum to bring a claim.  It does not change the substantive law: the FT Act and the Charter Rule itself are unchanged.  Defendants attempt to get around this distinction by characterizing the Murray Amendment as effectively a grant of immunity to King County Metro.  But the Murray Amendment does not allow King County Metro to claim immunity as a defense to an action brought before the FTA.  It does not even relieve King County Metro of its duty to abide by the FT Act and Charter Rule.  The Murray Amendment does not affect any "substantive element" of the Charter Rule.  *Logan*, 455 U.S. at 433.

Instead, the Murray Amendment, by its terms, prevents FTA from enforcing the Charter Rule against King County Metro.  In other words, it takes away the only forum with which to adjudicate Charter Rule violations against that transit agency.  It takes away the ability of FTA to hear complaints against King County Metro just as surely as the 120-day FEPA limitation period took away the *Logan* plaintiff's right to a forum.  It takes away the ability of claimants to assert their rights.  *See Logan*, 455 U.S. at 433, *Jung*, 339 F. Supp. 2d at 43.  The Murray Amendment is not a grant of immunity – a substantive change in the law – it is the denial of a forum and the deprivation of a procedural right.

### V.  Defendants' Arguments on Equal Protection are Unavailing

Defendants make no attempt to argue that the Murray Amendment is not a legislative attempt to treat a small group of privately-owned charter operators that operate in the Seattle area differently from such operators in the rest of the country.  There is no question that the Murray Amendment does not "afford similar treatment to similarly situated persons."  *News America*

*Publishing, Incorporated v. Federal Communications Comm'n*, 844 F.2d 800, 804 (D.C. Cir. 1988).  Defendants counter Plaintiff's equal protection arguments by asserting simply that a rational basis standard should apply and that the government has met that standard.  Opp. at 30-34.  Defendants are wrong on both counts.

Defendants characterize this case as one merely involving economic considerations. Opp. at 30.  They argue that because the Murray Amendment only creates "economic distinctions," then this court should analyze the matter using a rational basis standard under *FCC v. Beach Communications, Inc*., 508 U.S. 307, 313 (1993) and *Heller v. Doe by Doe*, 509 U.S. 312 (1993).  Opp. at 30-31.

But this case is not about the alleged "economic distinctions" created by the Murray Amendment, it is about the right of ABA and its members to challenge illegal activity by King County Metro before the federal agency charged with adjudicating such matters.  ABA raises substantial, fundamental constitutional rights that have been infringed upon by the Murray Amendment.  Thus, the need to analyze this case using the heightened rational basis standard under *Ruggiero v. FCC*, 317 F.3d 239 (2003) and *News America Publishing, Incorporated v. Federal Communications Comm'n*, 844 F.2d 800, 804 (D.C. Cir. 1988) is not only appropriate, it is necessary.  Even Defendants' quotation of *Heller* notes that a rational basis standard would be appropriate in most cases, except those that "'affect fundamental rights [or] proceed along suspect lines.'"  *Heller*, 509 U.S. at 319 (*quoting New Orleans v. Dukes*, 427 U.S. 297, 303 (1976)).  This case does affect fundamental rights, requiring a standard higher than simple rational basis.

The government has not met that standard in this case.  Defendants offer that the Murray Amendment was necessary to provide affordable transportation to sporting events in the Seattle

area.  The desire to allow people to save a few dollars on their way to a baseball game, even if

true in this situation, should not trump the fundamental constitutional rights of citizens to petition

the government for redress of grievances, or to due process or equal protection of the law.  It

should not infringe upon the separation of powers inherent in the Constitution.  It is simply not a

good enough reason.

Moreover, even under a rational basis test, Defendants have failed to demonstrate that the

Murray Amendment was intended to serve this stated purpose.  As support for its claim, the

government merely offers a press release issued by Senator Murray purporting to explain the

reasons behind the legislation.  This press release cannot be used to determine Congress' intent.

*See Consumer Product Safety Comm'n v. GTE Sylvania, Inc*., 447 U.S. 102, 118 (1980) ("And

ordinarily even the contemporaneous remarks of a single legislator who sponsors a bill are not

controlling in analyzing legislative history.  *Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979).

We do not think that either Representative Moss' isolated remark or the *post hoc* statement of the

Conference Committee with respect to § 6(b) is entitled to much weight here."); *Ambassador

Division of Florsheim Shoe v. United States*, 748 F.2d 1560, 1565 (Fed. Cir. 1984) ("It is true the

Senate Finance Committee issued a press release, No. 116, as noted by the CIT, which stated that

duties would be assessed after review prospectively only.  This release has no counterpart in the

legislative history and is not itself a part thereof.").  Because of the lack of legislative history, we

do not know Congress' true intent.

There is no evidence, other than the self-congratulatory press release by Senator Murray,

that there were problems with the service to Mariners games provided by a private operator for

the 2009 season.  There is no evidence that riders had to pay "steep fares" or put up with "sub-

par service" as the press release states.  Indeed, Plaintiffs have shown that even King County

Metro charges a premium fare for the service over and above what it would normally charge for similar transportation.  Given the lack of evidence of problems with privately-owned operators providing the service, it is just as likely that the amendment was adopted to curry favor with several high-powered constituencies in Seattle, or to pander to voters, or even to simply deny the service to some disfavored privately-owned operators, than it was to provide affordable transportation.

In sum, Defendants do not contest that the Murray Amendment treats similarly situated persons differently.  Their argument that rational basis scrutiny is appropriate is invalid given the fundamental constitutional rights at stake in this litigation.  The rationale behind the legislation – affordable transportation to sporting events – cannot trump these fundamental rights.  Finally, they do not even offer concrete evidence that the purported basis was even the intent of Congress.  Nothing in the record indicates King County Metro alone could provide affordable service.  In fact, Starline provided the service in 2009.  Additionally, King County Metro could have sought an exception from the Charter Rule to provide the service itself, as it did in 2008, but chose not to do so.

### VI.  ABA Has Shown a Likelihood of Success on its Separation of Powers Claim

The Government's opposition does nothing to overcome ABA's compelling arguments that the Murray Amendment violates the Separation of Powers principle.  As ABA stated in its Application, "'it is a breach of the National fundamental law if Congress gives up its legislative power and transfers it to the President, or to the Judicial branch, *or if by law it attempts to invest itself or its members with either executive power or judicial power*.'"  *Buckley*, 424 U.S. at 121-22 (*quoting Hampton & Co. v. United States*, 276 U.S. 394, 406 (1928) (emphasis added)).  The

Murray Amendment violates the separation of powers principle by investing Congress with both executive and judicial power.

To counter ABA's argument that the Murray Amendment imposes on the Executive function to faithfully execute the laws, Defendants claim that the Murray Amendment "effectively made KCM immune from enforcement of the Charter Rule," and that "Grants of immunity and abolitions of congressionally-created rights through legislation are neither unusual nor unconstitutional." Opp. at 36. They cite to three cases, none of which support their argument.

First, Defendants' counter-argument that grants of immunity and abolition of congressionally-created rights are valid, is neither here nor there. It does not answer ABA's charge that the President, through the FTA, is obligated to enforce the law and to oversee its grant monies, and that the Murray Amendment prohibits the President from fulfilling that obligation. The Murray Amendment did not amend the underlying statute. FTA is still obligated to provide grant funds to transit agencies, including King County Metro, and FTA is still obligated to oversee the expenditure of those funds. The Murray Amendment, however, takes away FTA's authority to do so with regard to the Charter Rule and King County Metro. Without the Murray Amendment, FTA could initiate an investigation into King County Metro on its own without a complaint being filed. 49 C.F.R. § 604.33. Taking away the right of privately-owned operators to challenge illegal charter service doesn't affect this infringement on the executive's function.

The cases cited by Defendants do not help their case. *Jung* dealt with a separation of powers argument in the context of a court challenge in an antitrust action. It did not deal with the Executive's power to enforce and faithfully execute the laws. *Shook v. District of Columbia*,

132 F.3d 775 (D.C. Cir. 1998), dealt with the ability of District of Columbia school board to control public schools after the creation of a separate control board divested the school board from some of its powers.  It had nothing to do with the separation of powers – in fact, that phrase is not even mentioned in the decision.

Defendants' arguments that the Murray Amendment does not infringe upon the judicial aspect of the Charter Rule are equally unavailing.  First, Defendants assert incorrectly that the FTA may still perform their adjudicatory function because they may still issue advisory opinions and cease and desist orders.  They can do nothing under the Murray Amendment, and even if they could issue advisory opinions, that does not take anything away from the fact that the rest of the complaint process – the very essence of a quasi-judicial function – is admittedly encroached upon.

Second, Defendants' reliance on *Jung*, *United States v. Klein*, 80 U.S. 128 (1871), *Plaut v. Spendthrift Farm, Inc*, 514 U.S. 211 (1995), and other cases is misplaced.  Defendants argue that the Murray Amendment does not prescribe a judicial outcome, but merely changes the applicable law.  Opp. at 37-38.  On the contrary, Congress did not change the FT Act, but merely gave King County Metro license to ignore that law at its pleasure.

This is not a case in which Congress changes the substantive law which effectively granted immunity to a particular set of entities as they did in *Jung*.  In that case, Congress adopted the Pension Funding Equity Act of 2004, which created or confirmed an antitrust exemption for graduate medical education residency matching programs.  *Jung*, 339 F. Supp. 2d at 31.  The statute provided that "[it] shall not be unlawful under the antitrust laws to sponsor, conduct, or participate in a graduate medical education residency program, or to agree to sponsor, conduct, or participate in such a program."  *Id*. at 34 (quoting sec. 207 of the act).  It

also made evidence of such conduct inadmissible in Federal courts.  *Id*. at 34-35.  Importantly, the court found that the act did not preclude all kinds of antitrust claims against the targeted entities.  *Id*. at 37 ("Accordingly, congressional confirmation that the Match program or participation in the Match program does not constitute a per se violation of the antitrust laws in the substantive provision of Section 207 does not defeat plaintiffs' antitrust claim.") and 38-39.

In analyzing the separation of powers doctrine, the court concluded that Congress had "changed the scope of permissible antitrust claims . . ." *Id*. at 42.  The court acknowledged, however, that "The line between a statute that provides the standard to which courts must adhere and a statute that compels a specific result in a pending action at times is difficult to draw." *Id*.  Their conclusion in that case was bolstered by the fact that the change in the law applied to actions beyond the particular lawsuit.  *Id*.  ("the fact that Section 207 has application to actions beyond this lawsuit only bolsters the Court's conclusion that the statute was amended.").

The Murray Amendment crosses that line.  It is not a statute which amended the underlying law.  By its plain terms, it did not amend the FT Act.  It merely prohibits the FTA from adjudicating any complaints against a single transit agency.  In doing so, it effectively determines the outcome of any complaint that would be brought before the FTA.  As such, is it more like the types of legislation *Klein* prohibits as an unconstitutional intrusion on an agency's judicial function.  That conclusion is bolstered by the fact that no other transit agency in the country is given the same exception.  The Murray Amendment cannot be said to have changed the law if the law still applies to every other similarly situated transit agency.

**CONCLUSION**

For the reasons stated herein and in its Application for Preliminary Injunction, ABA

requests that this court grant its motion and find that ABA is entitled to a favorable final decision

on the merits of its claims.


May 28, 2010                                            Respectfully submitted,


                                                       /s/ Richard P. Schweitzer
                                                       Richard P. Schweitzer
                                                       Craig M. Cibak
                                                       Richard P. Schweitzer, PLLC
                                                       1776 K Street, N.W.
                                                       Suite 800
                                                       Washington, D.C. 20006
                                                       (202) 223-3040

                                                       Counsel for the American Bus
                                                       Association, Inc.

17